SALOMON *v.* UNITED STATES (No. 532).[1]

POWDERED TALC NOT FRENCH CHALK.

Powdered talc is a substance in itself, not a material made up of a mineral substance; and having a proper regard for the rule that language employed in an act is presumed to have been used in accordance with the construction which has been given it by a long-continued practice of an administrative department or by a court, powdered talc may not be deemed French chalk and dutiable as such, but it is dutiable as a manufactured article under paragraph 480, tariff act of 1909.

United States Court of Customs Appeals, May 22, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7128 (T. D. 31088).

[Reversed.]

*Curie, Smith & Maxwell* (*W. Wickham Smith* of counsel) for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*Edwin R. Wakefield* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importation in this case consists of powdered talc. The collector assessed a duty of 35 per cent ad valorem under paragraph 95 of the tariff act of 1909, which reads as follows:

95. Articles and wares composed wholly or in chief value of earthy or mineral substances, not specially provided for in this section, whether susceptible of decoration or not, if not decorated in any manner, thirty-five per centum ad valorem; if decorated, forty-five per centum ad valorem; carbon, not specially provided for in this section, twenty per centum ad valorem; electrodes, brushes, plates, and disks, all the foregoing composed wholly or in chief value of carbon, thirty per centum ad valorem.

The importer protested, claiming the article to be dutiable at 20 per cent ad valorem under paragraph 480 of said act, which reads as follows:

480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part not provided for in this section, a duty of twenty per centum ad valorem.

After hearing before the Board of General Appraisers, in which considerable testimony was taken on both sides, the board decided the articles to be dutiable at 1 cent per pound under paragraph 13

_____

of the tariff act of 1909, either by specific provision or by virtue of the similitude clause. Paragraph 13 is as follows:

13. Chalk, when ground, bolted, precipitated naturally or artificially, or otherwise prepared, whether in the form of tubes, blocks, sticks or disks, or otherwise, including tailor's, billiard, red, or French chalk, one cent per pound; manufactures of chalk not specifically provided for in this section, twenty-five per centum ad valorem.

From that decision an appeal is taken to this court.

Disposing first of the classification of the collector, we think the board was right in holding that it can not be sustained. This article, while a mineral substance, is a mineral substance ground. Paragraph 95 relates to articles composed wholly or in chief value of earthy or mineral substances, whether susceptible of decoration or not. The plain meaning of this language is "articles or wares made up of" a mineral substance, and not the substance itself, which the ground talc clearly is.

Upon the question of whether this article is classifiable as French chalk, the testimony of the witnesses was to some extent conflicting. The witnesses for the Government, while testifying that French chalk and ground talc were synonymous terms, indicate very clearly by their testimony that the usual sale name of the article here imported is talc or talcum. The witnesses so order it when ordering and so sell it when selling. Their testimony means little more than that according to their opinion the substance of French chalk and the substance of talcum is the same. The witnesses on the part of the importer make this clearer. But were this left in doubt, we think the history of the legislation and the decisions of the Board of General Appraisers fortify the claim of the importers and make their position in this case unassailable.

The question was presented to the board in the case of McNear *v.* United States (T. D. 24864), where the identical merchandise here involved was the subject of decision. It was claimed there, as here, that under the corresponding paragraph 13 of the act of 1897 the importation was dutiable as "ground French chalk," the importer claiming, as here, that the merchandise was properly dutiable at 20 per cent ad valorem under the provisions of that act relating to unenumerated manufactured articles. The board found, on the report of the Government chemist, that the term "French chalk" was frequently used in technical works as synonymous with "steatite" or "soapstone." When used without limiting or qualifying words, the French chalk in pieces suitable for marking cloth is generally meant. If powdered, the fact is generally stated. The term French chalk is a misnomer, chalk being a native soft carbonate of lime, while talc, soapstone, French chalk, are hydrated silicates "of magnesia."

The board reaffirmed the decision in T. D. 23027, where it was held that chalk, as used in the first and last parts of paragraph 13, "relates only to the article generally known in commerce and technically by that name, and which, according to accepted authority, consists of

carbonate of lime or natural form of calcium carbonate, and does not include earthy hematite, neddle, red ocher, or clay colored with ferric oxide, or the like," and that from the analysis showing the merchandise in question to be hydrated silicate of magnesia and not carbonate of lime, it was clear that the importation in question was not chalk in fact nor the chalk of commerce. The board also reaffirmed its decision in T. D. 23028.

But the board held further—and this is significant—that the contention of the chemist at the port of New York that the words "French chalk" when used without limitation or qualification "covers only the article used by tailors for marking clothing, seems to be borne out by the language of paragraph 13." That language was quoted, and emphasis was placed upon the words "including tailors', billiard, red, or French chalk." The board said:

> While it is true, as appears from the testimony taken by this board in other cases involving this identical article, that it is sometimes known as French chalk and soapstone, it is equally true, as shown by such testimony, that it has no uniform and unvarying trade designation, and that it is most generally known in trade and commerce as talc.
>
> It is quite clear that Congress intended to, and did in fact, only cover the article which was well known to trade and commerce as chalk, when made up in any form, except when medicinal or prepared for toilet purposes, and recognizing that certain articles, such as tailors' chalk, billiard chalk, and French chalk, which are invariably made up in the form of cubes, blocks, sticks, or disks, were not in fact chalk, provided for them eo nomine, as otherwise they might not fall within the class of articles mentioned in the paragraph as chalk.

Two cases were subsequently decided by the Board of General Appraisers prior to the enactment of the statute of 1909. In Doggett v. United States (T. D. 28425) it was held that irregular pieces of sawed talc about 5 inches long and varying in width and thickness, used by ironworkers as pencils in marking on iron, were dutiable as French chalk. This was based upon testimony introduced by the Government to the effect that talc in the form in which it was imported in that particular case is the same as French chalk, expressly named in paragraph 13.

It will be noted that this case is not opposed to the holding of the board in the previous decision in McNear's case, as the board in that case recognized that articles of talc in the form of blocks, sticks, or disks were provided for in paragraph 13, at the same time holding that powdered talc was not French chalk or chalk of any kind.

The question again came before the board in T. D. 29763, Abstract No. 21245, the case of Kraemer & Foster. In that case, as appears by the fuller report of the case on appeal, in 180 Federal Reporter, 638, the article was imported in the form of cubes, it having been finished by sawing, and its chief use was shown to be in gas burners and electric insulation. The board found this to be French chalk, following the decision in T. D. 28425. This case again was within the exception noted by the board in McNear's case, as the

importation was in the form of cubes, which were evidently treated by the board in that case as coming within the term ''French chalk.''

It will be seen, therefore, that when Congress had the question before it and enacted the provisions of section 13 of the act of 1909 powdered talc had been differentiated from French chalk and had never been treated or assessed as French chalk, nor, so far as the record shows, had the Treasury Department attempted to so treat it after the decision in McNear's case. Indeed, as early as 1892, in T. D. 12458, the board has held this article to be dutiable as an unenumerated manufactured article. This was repeated in T. D. 19485, and the only later attempt shown to assess ground talc as French chalk was that which proved unavailing in McNear's case. The rule that language employed by Congress is presumed to have been used in accordance with the construction which has been given it by long-continued practice of an administrative department or by a court is thoroughly established. See Shallus *v.* United States (1 Ct. Cust. Appls., 556; T. D. 31552) and cases cited; United States *v.* Myers (1 Ct. Cust. Appls., 257; T. D. 31301); Komada *v.* United States (215 U. S., 392).

We think the board was in error in holding this importation to be French chalk, and that it was properly dutiable as an unenumerated manufactured article.

The decision of the board will be *reversed.*