### STROHMEYER & ARPE CO. *v.* UNITED STATES (No. 480).[1]

1. A CHEMICAL COMPOUND.

A chemical compound is not simply a mingling of components, but a combination of them, resulting in their destruction as distinct entities and in the development by chemical reaction of a new substance possessing properties radically different from those of its constituent elements.

2. "MIXTURES."

Mixture implies that the corporeal integrity, the separate chemical nature, and individual properties of the mixed ingredients have been preserved.

3. LIME POWDER, A MIXTURE, NOT A CHEMICAL COMPOUND.

A combination of lime, carbonate of lime, and manganese oxide, for use in drying and hardening varnish, is a chemical mixture, and as such is dutiable under paragraph 3, tariff act of 1909.

### United States Court of Customs Appeals, November 22, 1911.

APPEAL from Board of United States General Appraisers, Abstract 23840 (T. D. 30865). [Affirmed.]

*Brown & Gerry,* for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

This case involves the classification of merchandise imported at the port of New York and assessed for duty by the collector of customs at 25 per cent ad valorem as a chemical mixture under the provisions of paragraph 3 of the tariff act of 1909, which reads as follows:

3. Alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing, and all chemical compounds, *mixtures,* and salts, and all greases, not specially provided for in this section, twenty-five per centum ad valorem; chemical compounds, mixtures and salts containing alcohol or in the preparation of which alcohol is used, and not specially provided for in this section, fifty-five cents per pound, but in no case shall any of the foregoing pay less than twenty-five per centum ad valorem.

The importers protested that the importation was not a chemical mixture, and among other grounds of protest, which it is unnecessary to discuss, set up the claim that the merchandise was dutiable under the provisions of paragraph 480, which reads as follows:

480. That there shall be levied, collected and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part not provided for in this section, a duty of twenty per centum ad valorem.

---

[1] Reported in T. D. 32035 (21 Treas. Dec., 562).

The Board of General Appraisers overruled the protest, and the importers appealed.

The deputy appraiser reported the merchandise to be a mixture of lime, carbonate of lime, and manganese oxide, used for the purpose of drying and hardening varnish. R. W. Moore, chemist in charge of the United States Appraiser's Laboratory at New York, testified on the part of the importer that the importation was a mixture of lime, carbonate of lime, and manganese oxide, mechanically and not chemically combined. Hermann Arpe, treasurer of the importing company, was of the opinion that the merchandise was made up of lime and a "manganate of lead." He was in accord, however, with the Government chemist, that the composition, whatever its components might be, was a mechanical mixture and not a chemical compound. The board found that the importation, which was invoiced as lime powder, consisted of a mixture of lime, carbonate of lime, and manganese dioxide. On the evidence presented by the record the only question to be determined by the appeal is whether a mechanical mixture of lime, carbonate of lime, and manganese oxide or dioxide is a chemical mixture within the meaning of paragraph 3 of the tariff act of 1909 as hereinbefore set out. Lime, as shown by the testimony, results from the chemical combination of calcium and oxygen, carbonate of lime from the chemical combination of lime and carbonic acid, and manganese oxide or dioxide from the chemical combination of manganese and oxygen. That these components of the merchandise are chemicals is not disputed. To make up the goods under discussion these chemicals were commingled in such a way as to preserve their individual properties and separate chemical nature, and admittedly such an association of materials constitutes not a chemical compound but a mechanical mixture. From this it would seem to follow that the resultant product was a mixture of chemicals, or, in short, a chemical mixture.

In this connection it should be remembered that a mingling of chemicals must result either in a chemical compound, destroying the identity of the original materials, or in a mere mixture in which the chemical individuality of the original materials is preserved. Scientifically speaking, mere mixtures of chemicals are known as mechanical mixtures. The scientific expression in a tariff law was open, however, to a construction which would include all classes of mixtures held together mechanically; and we think Congress deliberately made use of the designation "chemical mixtures" in order to manifest clearly its intention that the operation of paragraph 3, in so far as mixtures were concerned, was to extend to mixtures of chemicals and not to mixtures of other substances which were not chemicals. Counsel for the importers earnestly argue, however, that "chemical compounds" and "chemical mixtures" are virtually synonymous terms,

and that the addition of the latter phrase to paragraph 3 accomplished no extension of its provisions. To that proposition we are not willing to accede; first, because a chemical combination of constituent elements does not necessarily result from a mixture of chemicals, and, second, because it seems to be well settled by judicial decisions and by scientific usage that there is an essential difference between a mixture and a chemical compound.

As we have already observed, a chemical compound necessarily implies not a mere mingling of components but a chemical combination of them, resulting in their destruction as distinct entities and in the development by chemical reaction of a new substance possessing properties radically different from those of its constituent elements. McKesson *v.* United States (1 Ct. Cust. Appls., 213–216). On the other hand, in chemistry and mineralogy the term "mixture" carries with it the idea that the corporeal integrity of the ingredients has been preserved and that their incorporation has not lost to them their individual properties and separate chemical nature. (Webster's International Dictionary; Standard Dictionary; Century Dictionary.) This distinction between a mixture and a chemical compound is so well known and has been so frequently pointed out by the decisions that it is inconceivable that Congress should have so mistaken the meaning of the terms as to assume that they were equivalents and might be used interchangeably. *In re* Auffmordt & Co. (T. D. 11074); Levi *v.* United States (126 Fed. Rep., 420; T. D. 25050); *in re* Isaacs, Vought & Co. (T. D. 25410); *in re* F. Behrend (T. D. 25733); *in re* F. R. Philipps & Sons (T. D. 27051); United States *v.* Proctor (145 Fed. Rep., 126; T. D. 27115). The very fact that there is a difference between a mixture and a chemical compound and that disputes arose as to whether importations belonged to one category or the other was, we think, the cause which induced Congress to amend paragraph 3 of the tariff act of 1897 by making provision therein for chemical mixtures. We are of opinion that the amendment was not a purposeless bit of legislative redundancy, but was the result of a long experience which justified Congress in concluding that litigation would be best avoided by subjecting to the same rate of duty articles the true nature of which had been a frequent subject of controversy.

Counsel for the importers contend that the decision of the board is in conflict with the conclusions reached by it in T. D. 29922 on the protest of the same importers. In that case the board held, in July, 1909, that a mixture from which no chemical union resulted was not a chemical compound, and that therefore a mixture of lime, carbonate of lime, and manganese oxide, resulting in no combination of the constituents, was a mechanical mixture and not dutiable as a chemical compound under paragraph 3 of the act of 1897. As the law then stood the board was correct in so deciding, but whatever

weight that decision might have in determining the nature of the goods involved in this appeal, it can hardly be considered as adverse to their classification under paragraph 3 as subsequently amended by the tariff act of August 5, 1909. Counsel call attention also to T. D. 30223 and claim that the finding there made is in conflict with the meaning given by its decision in this case to the term "chemical mixtures." We think that the facts disclosed by the record in T. D. 30223 do not warrant that conclusion. The merchandise which the board was required to classify in that case was a mixture of 20 per cent Trinidad asphalt, 20 per cent California asphalt, 12 per cent liquid asphalt, 6 per cent ammonia, and the balance water. None of these substances, with the exception of ammonia, could well be designated as a chemical, and hence the composition could not be regarded as a mixture of chemicals.

The decision of the Board of General Appraisers is *affirmed.*

DE VRIES, Judge, did not sit in this case.