(C. D. 835)

HENRY KELLY & SONS CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 8, 1944)

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on merchandise invoiced as "Ugli fruit." The collector classified the shipments under the provision for "oranges" in paragraph 743 of the Tariff Act of 1930 and assessed duty on the fruit at 1 cent per pound. The plaintiff claims that the commodity is dutiable at 35 per centum ad valorem under the provision for "fruits in their natural state  *.  *  * not specially provided for" in paragraph 752. ·

The first witness called by the plaintiff was Mr. James F. Harris. He testified that he is the head fruit buyer for Henry Kelly & Sons Co., Inc., the importing firm, and has occupied that position for 5 years, but his experience with the firm extended back to the year 1914; that he had been engaged in the purchase and sale of all varieties of fruits for 10 years, both imported and domestic, and he had handled all citrus fruits; that he purchased the Ugli fruit covered by the instant shipments; that such fruits, which originate in Jamaica, West Indies, were first known in this country in 1939 and his firm was the first to introduce them; that he inspected the shipments when they came in, cut some of the fruit open and tasted it. When asked to describe the merchandise, he stated:

Well, Ugli fruit is the ugliest thing you could think of in the line of a citrus fruit. It is round on top, very, very coarse skin, and it comes to a point at the stem end. It has a greenish tint on the skin, with a yellow, very heavy, thick

skin, and it peels very easily. There is quite a bit of oil in the skin. The fruit inside is pinkish in color; no seeds. It has approximately, oh, 8 to 10 cells. It has a lime and a grapefruit flavor combined. That is about all I can think of in the description of it.

The witness testified further that Ugli fruit is not an orange, a grapefruit, or any of the well-known varieties of citrus fruit; that it has its own particular flavor and appearance; that he never sold it as oranges, the name under which he sold it being "Ugli."

The defendant called Mr. Charles W. S. Curley who, while acting as United States customs examiner, examined samples of the shipments when they arrived. He testified that he had examined citrus fruits for 30 years; that the samples from the instant shipments which he saw were all of a fruit very closely resembling a King orange, a large flattish fruit with a rough, oily skin, yellowish-brown in color; that the skin was thick and very easily separated from the fruit, like a tangerine; that he had tasted it and found that it had a less pronounced flavor than some oranges but "if you ate it in the dark you might be in doubt whether it was an orange or grapefruit"; that he did not detect any flavor of the lime. On cross-examination, when asked what the shape of the fruit was, he said:

Round in one way and flat the other way, like a tangerine. But then I have seen some also that had a bit of a point to it, which possibly you might call pear-shaped.

The next witness called by the defendant was Mr. Alan G. Webb, who is an inspector in the United States Department of Agriculture in charge of the foreign plant quarantines, at the port of New York. He testified that he examined the files of his office in order to ascertain if there was any correspondence with the Department of Agriculture in Washington, D. C., with respect to the Ugli fruit and found a letter from the Department that there was a sample shipment of the merchandise imported from Canada; that it was a fruit new to the personnel in the New York office, so samples were taken and sent to the chief of the Division of Foreign Plant Quarantines in Washington where they were submitted to Dr. Walter R. Swingle for the purposes of identification. The letter referred to, dated February 28, 1940, was admitted in evidence and marked defendant's exhibit No. 1. The following statement appears therein:

We are in receipt of your letter of February 23 (1940) and of the sample of "Ugli fruit" referred to therein which you forwarded under separate cover.

We regret to advise you that we have been unable to ascertain the specific name of this fruit. Dr. W. T. Swingle, Division of Plant Exploration and Introduction of the Bureau of Plant Industry, states that it is a cross between a King orange and a grapefruit.

Mr. Harris was recalled in rebuttal by the plaintiff. He testified that he had tasted the Ugli fruit more than a hundred times; that he is familiar with King oranges and had handled them for a period of 10

years; that an Ugli fruit is not a King orange. When asked to explain to the court the difference between a King orange and the Ugli fruit, he said:

A King orange is round and flat on the ends. It has a brownish color to the skin. It peels very easily, and has an orange flavor. An Ugli fruit is oval on top, and at the stem end it is very nosey, that is, it will come to a point, and the skin as it comes to a point has ridges on it somewhat similar to a cantaloup, but of course, coming to a point they would be smaller. The color of the fruit on the inside is a pinkish color. A King orange is more of an orange color. The Ugli fruit has an entirely different flavor. The King orange tastes similar to an orange. It is a little coarser than the orange itself, the tangerine being mixed with it. The Ugli fruit has a smoother, sweeter flavor, and there are no seeds in the Ugli fruit and it has a sharp sort of aftertaste that you would identify with a lime taste.

He testified further that he could identify a definite lime taste in the Ugli fruit and that King oranges or any other kind of oranges did not have that taste. In answer to questions by the court, he stated that King oranges originate in Florida and are seedless; that they are a combination of tangerines and oranges and have a very rough skin and more of a flat top than round.

We have examined the dictionaries and encyclopaedias and have been unable to find any reference to Ugli fruit. From the testimony introduced it is evident that it is a citrus fruit from a tree produced by crossing a grapefruit tree with that of a King orange. There are a number of kinds of citrus fruits listed under the word "citrus" in Webster's New International Dictionary, 1933 edition, namely, the citron, citrange, orange, lemon, lime, kumquat, shaddock, tangelo, and mandarin. The New International Encyclopaedia names some additional species, such as bergamot, pomelo, and forbidden fruit. The pomelo and the shaddock are grapefruit. Of these, the only ones provided for by name in the Tariff Act of 1930 are lemons, limes, oranges, grapefruit (in paragraph 743) and citrons (in paragraph 1649). There is no provision in the act for citrus fruit.

The products in this case apparently have characteristics of both the orange and the grapefruit, but can they be designated as either of these commodities? The similitude clause in paragraph 1559 cannot be invoked because the application thereof is limited to products which would otherwise be classified as nonenumerated articles under paragraph 1558. *United States* v. *Stouffer Co.*, 3 Ct. Cust. Appls. 67, T. D. 32351. If the merchandise in this case is not specially provided for, it would be covered by the provision for "fruits in their natural state" in paragraph 752.

Apparently the lexicographers have not given a name to the imported articles, but the testimony shows that they were sold under the name "Ugli fruit" and not as "oranges." The tangelo was produced in a similar manner. Webster's New International Dictionary defines it as "a hybrid between the tangerine orange and the grape-

fruit or pomelo." It is evident that a new word was created to cover that product, differentiating it from the tangerine orange and the grapefruit or pomelo. In the same manner the Ugli fruit might be differentiated from the species from which it was derived. It is a new product which was not imported when the Tariff Act of 1930 was enacted.

It is well settled that tariff acts are drafted in the language of commerce, which is presumed to be that in common use. *Bakelite Corp.* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117. It is also well settled that when there is no common name for a commodity, the commercial designation will control. *Mendelson* v. *United States*, 1 Ct. Cust. Appls. 346, T. D. 31451. The only name under which the imported merchandise in this case is known appears to be "Ugli fruit" which is the name under which it was sold.

Counsel for the defendant cites *Quong Lee & Co. et al.* v. *United States*, C. D. 716, in which case kumquats were held to be oranges. That case differs from this because the common meaning of the word "kumquats," as shown by the lexicographers, indicates that it is a species of the orange. Counsel relies also on the definition of the word "orange" in Webster's New International Dictionary, which reads as follows:

*orange n.* 1. The large globose fruit of the rutaceous tree *Citrus aurantium.* Botanically the orange is a berry consisting of ten or more separable pulpy carpels, each containing several seeds and numerous juicy cells, the exocarp being a yellow or reddish yellow leathery rind containing many oil glands. There are three principal subspecies of the orange, distinguished by shape, color, thickness of rind and degree of acidity of pulp: (1) The sweet, or common orange (*C. aurantium sinensis*). (2) The bitter, or Seville orange (*C. aurantium bergaradia*). (3) The bergamot orange (*C. aurantium bergamia*). Numerous varieties, as the naval and blood oranges, exist in cultivation, also hybrids between the sweet orange and other species of *Citrus* * * *.

The particular part of the definition upon which defendant relies is "also hybrids between the sweet orange and other species of *Citrus.*" We are of opinion that the statement does not indicate that all hybrids produced by crossing the orange with other species of *citrus* are oranges. The statement relied upon means that there are some oranges in cultivation which are hybrids between the sweet orange and other species of *citrus.*

We find that the weight of evidence in this case establishes that the articles herein involved are not oranges, as classified by the collector, but are a variety of citrus fruit not provided for by name in the tariff act, and we hold that they are properly classifiable under the provision for "fruits in their natural state * * * not specially provided for," dutiable at 35 per centum ad valorem under paragraph 752. The protest is sustained. Judgment will be rendered in favor of the plaintiff.